UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                           Case No. 05-34215-DHW
                                                                Chapter 13
CYNTHIA LEWIS,

   Debtor.

**MEMORANDUM OPINION**

On December 5, 2008, Cynthia Lewis, the debtor in this chapter 13 case, filed a motion to modify her confirmed plan (Doc. #52). On February 14, 2009, 1st Franklin Financial Corp ("1st Franklin") filed an objection (Doc. #59) alleging that the modification was filed in bad faith.

An evidentiary hearing to consider the objection was set originally for April 13, 2009, but the hearing was continued at the request of the parties to May 11, 2009. At the evidentiary hearing, the debtor was represented by counsel Sandra H. Lewis, and 1st Franklin was represented by counsel Richard C. Dean, Jr. Upon consideration of the facts, the law, and the arguments of counsel, the court concludes that 1st Franklin's objection must be sustained.

**Jurisdiction**

The court derives jurisdiction in this matter from 28 U.S.C. § 1334 and from an order of the United States District Court for this district that confers jurisdiction in title 11 matters to the Bankruptcy Court. *See* General Order of Reference of Bankruptcy Matters (M.D. Ala. Apr. 25, 1985). Because the dispute concerns the confirmation of a plan, a core proceeding, this court's jurisdiction is extended to the entry of a final order or judgment pursuant to 28 U.S.C. § 157(b)(2)(L).

**Contentions of the Parties**

The debtor proposes to reduce her plan payments and lower the amount to be paid to unsecured creditors. According to the debtor, the modification is necessary because a reduction in income and increase in monthly expenses have

prevented completion of the plan as originally confirmed.

1st Franklin, however, contends that the modified plan is not filed in good faith because the original plan could have been completed, with creditors paid in full, had the debtor made payments as proposed. Further, according to 1st Franklin, the reduction in income sustained by the debtor occurred only recently and had no bearing upon the debtor's default under the original plan.

**Findings of Fact**

The debtor filed this chapter 13 case on November 23, 2005. Her original plan provided for bi-weekly payments to the trustee of $181 for a 58-month term or until secured creditors were paid the value of the property securing their claims and $9,000 was distributed to unsecured creditors. *See* Trustee's Summary of Confirmed Chapter 13 Plan (Doc. #23) and Order Confirming Plan (Doc. #25). On October 4, 2006, the plan was modified to increase the payments to the trustee to $204 twice monthly in order to accommodate the inclusion of a claim resulting from post-petition defaults under the debtor's home mortgage (Doc. #39).

On October 27, 2008, the chapter 13 trustee filed a motion to dismiss (Doc. #46) the debtor's case alleging a default in plan payments. In response to the motion, the debtor filed on December 5, 2008 a motion to modify the plan (Doc. #52). The debtor proposes to reduce plan payments from $204 twice monthly to $150 per month. Further, the debtor proposes to reduce the amount to be distributed to unsecured creditors from $9,000 to $2,000.

When the modified plan was filed, the debtor had paid only $8,451 into the plan, or about 60% of the payments that had become due. If the debtor had not defaulted prior to the modification, she would have paid approximately $14,047 into the plan as of November 30, 2008.[1] From that money, the trustee would have disbursed $2,000 to Ms. Lewis' attorney, $9,328 as principal debt

---

[1] The $14,047 is derived as follows: $181 bi-weekly payments from December 2005 through September 2006 for a total of $3,439 plus $204 twice monthly payments from October 2006 through November 2008 for a total $10,608. $3,439 and $10,608 produce a grand total of $14,047.

2

owed to secured creditors, approximately $750 in interest on secured claims and approximately $700 in trustee fees and expenses. Those amounts total $12,778. It follows that unsecured creditors, as of December 2008, would have been paid about $1,269 had there been no default in plan payments.

In the original schedule of income (Schedule I), the debtor estimated that her income from tax refunds would be $4,692 per year. During the pendency of this case, the debtor has received approximately $14,000 in income tax refunds, which averages $3,500 per year.[2]

Also, in the original schedule of income, the debtor's husband's net earnings were shown as $1,200 per month. The debtor testified that her husband, who is employed in the construction field, had actually earned less than the scheduled amount, but she had no records to substantiate the amount of her husband's earnings for the past three years.

In October 2008, the debtor's work hours were cut. As a result, she now works only four instead of five days each week. That 20% reduction in her income amounts to approximately $185 each month.

**Legal Conclusions**

Modification of a confirmed chapter 13 plan is controlled by 11 U.S.C. § 1329. 1st Franklin does not dispute that the proposed modified plan satisfies one or more of the four purposes for which a plan may be modified under § 1329(a). Instead, 1st Franklin contends that § 1329(b) makes the "good faith" requirement of § 1325(a)(3) applicable to modified plans and that the debtor's modified plan fails to satisfy that requirement.[3]

In short, 1st Franklin contends that the debtor has not proposed the

---

[2] The debtor testified that her income tax refunds were approximately $3,000 for tax year 2008, $4,000 for 2007, $4,000 for 2006, and $3,000 for 2005.

[3] The "good faith" confirmation requirement of the Code provides: "(a) Except as provided in subsection (b), the court shall confirm a plan if . . . (3) the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1329(a). 11 U.S.C. § 1325(a)(3).

3

modification in good faith because she is attempting to cure the default in her payments under the original plan by reducing the amount to be disbursed to unsecured creditors. 1st Franklin asserts that if the debtor had made the payments which came due under the original plan, there would be no need to reduce the distribution to unsecured creditors.

A chapter 13 debtor cannot simply modify a confirmed plan "willy nilly." *See In re Meeks*, 237 B.R. 856, 859-60 (Bankr. M.D. Fla. 1999). If such were permitted, all defaulting chapter 13 debtors could simply modify their plans under § 1329(a)(1) to retroactively nullify a default in plan payments at the expense of their creditors. Indeed, some courts have held that a debtor cannot, without a substantial showing, modify a plan near the end of its term so as to negate a default in plan payments. Instead, the debtor would have to either pay the amount in default or move for a hardship discharge under § 1328(b). *See In re Debing*, 202 B.R. 291, 293 (Bankr. D. Minn. 1996); *see also In re Guernsey*, 189 B.R. 477 (Bankr. D. Minn. 1995) (holding that a modification two months prior to completion of plan payments to reduce the dividend to unsecured creditors could not be confirmed).

In the instant case, the creditor contends that if the debtor had not defaulted, there would be no need to reduce the percentage to unsecured creditors. However, the facts do not support this argument. If the debtor had not defaulted under the plan, unsecured creditors would have received, as of December 2008, only about $1,269.[4] Under the plan proposing $9,000 to unsecured creditors, that leaves a balance of approximately $7,700. Therefore, unsecured creditors would not have been paid in full by December 2008 even if she had not defaulted in her payments.

However, if the modification is approved, the debtor's default will necessarily result in an amount to unsecured creditors that is lower than they would have received absent the default. This raises "good faith" implications.

---

[4] The debtor is not proposing by the modification to retroactively nullify the default. She is proposing to pay unsecured creditors $2,000, which is more than the amount they would have received by December 2008, the date of the modification, had she not defaulted in plan payments.

4

Good faith is determined on a case by case basis after considering the totality of the circumstances. *Kitchens v. Georgia Railroad Bank and Trust Company (In re Kitchens)*, 702 F.2d 885, 888-89 (11th Cir. 1983). *Kitchens* sets forth a non-exhaustive list of factors that a court should consider in determining whether a plan is proposed in good faith. Among those factors are "the amount of the debtor's income from all sources," "the living expenses of the debtor and [her] dependents," and the debtor's "demonstrated bona fides, or lack of same, in dealings with [her] creditors." *Id.* at 888-89.

In this case, the debtor had paid the equivalent of only two of three payments that had come due under the plan by the time she moved to modify the plan. Yet, during the pendency of the case, she received about $14,000 in income tax refunds. None of the refund money was paid to the trustee under the plan. Indeed, these refunds alone represent more than the debtor has paid under the plan altogether. In effect, the debtor not only did not make plan payments as required but kept all of her tax refunds without paying any of those funds toward her confirmed plan.[5]

Further, the debtor's explanation for the default in plan payments was merely that her income was less, and expenses more, than anticipated. However, nothing beyond this general and self-serving explanation was offered to corroborate and quantify the reduction in disposable income. As noted earlier, a debtor cannot in good faith without substantial justification modify a confirmed plan to cure her own default on the backs of unsecured creditors.[6] In the event that the debtor experienced a substantial change of circumstances preventing her completion of this plan, her alternative to dismissal is to seek a hardship discharge. Under the facts of this case, the court is not persuaded by a preponderance of the evidence that the modification is proposed in good faith.

---

[5] Under the plan, the debtor was not required to turn over her tax refunds to the trustee because she accounted for the refunds in fixing the amount of her bi-weekly plan payments. However, having defaulted in her plan payments, she was not privileged to use the tax refunds for other purposes.

[6] A change in the debtor's circumstances, although not a threshold requirement to modification under § 1329(a), may nevertheless be a factor relevant to the merits of the modification under 11 U.S.C. § 1329(b). *Ledford v. Brown (In re Brown)*, 219 B.R. 191 (B.A.P. 6th Cir. 1998).

5

## Conclusion

For the foregoing reasons, the court finds that the debtor's modified plan was not filed in good faith and that 1st Franklin's objection to the plan should be sustained. Pursuant to Fed. R. Bankr. Proc. 9021, an order denying confirmation of the modified plan will enter separately.

Done this 24th day of June, 2009.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Debtor
   Sandra H. Lewis, Debtor's Attorney
   Richard C. Dean, Jr., 1st Franklin's Attorney
   Curtis C. Reding, Trustee